ESTATE OF HOGAN: HOESLY and others, Appellants, vs. HOGAN and others, Respondents.

*October 10, 1938—January 10, 1939.*

For the appellants there were briefs by *Burmeister & Snodgrass* of Monroe and *Bagley, Spohn, Ross & Stevens* of Madison, and oral argument by *William H. Spohn* and *Roy F. Burmeister.*

*J. M. Fitzgibbons,* attorney, and *William F. Thurber,* guardian *ad litem,* both of Monroe, for the respondents.

The following opinion was filed November 9, 1938:

MARTIN, J. There is no dispute as to the facts. The appellants contend that the county court erred in holding

that the homestead exemption superseded the appellants' lien under the judgment of the circuit court. It appears that on the date the judgment was entered and docketed in the circuit court, Mrs. Hogan owned a one-hundred-seventeen-acre farm in Green county which did not then constitute her homestead. Mrs. Hogan moved on this farm March 1, 1933. It then became her homestead and remained such continuously until her death on September 16, 1934. Upon Mrs. Hogan's death, appellants filed their claim, based on said judgment, against her estate and during the probate, it appears that the premises were sold for a net sum of $4,111.99, under an agreement that the appellants' lien, if any, against the real estate should be preserved as a lien against the proceeds of the sale. The respondents concede for the purpose of this appeal that appellants have neither waived nor lost any rights by filing a claim or consenting to the sale. It is further conceded that there is nothing in Mrs. Hogan's will which imposes any charge on the real estate for the payment of the appellants' judgment.

The sole question is whether homestead rights acquired in real estate after a judgment has become a lien thereon supersede the judgment lien upon the death of the homesteader. The county court held that by virtue of the provisions of sec. 238.04, Stats. 1931, and upon the decision of this court in *Berger v. Berger,* 104 Wis. 282, 80 N. W. 585, the homestead descended to the heirs free of the lien of the judgment. The lien statute, sec. 270.79 (1), Stats. 1931, provides:

"(1) Every such judgment, when so docketed, shall, for a period expiring ten years from the date of the rendition thereof, be a lien on the real property in the county where the same is docketed, except the homestead mentioned in section 272.20, of every person against whom such judgment shall be rendered and docketed and which he may have at the time of docketing thereof in the county in which such real estate is situated or which he shall acquire at any time thereafter within said period of ten years. . . ."

The statute as to homestead descent, sec. 237.02 (4), Stats. 1931, provides:

"When the owner of any homestead shall die, not having lawfully devised the same, such homestead shall descend, free of all judgments and claims against such deceased owner or his estate except mortgages lawfully executed thereon and laborers' and mechanics' liens, in the manner following: . . .

"(4) If he shall leave no issue or widow, such homestead shall descend under section 237.01 subject to lawful liens thereon; provided, however, if there be no widow or minor child of such deceased owner of any homestead living at the time of his death such homestead shall be subject to and charged with the expenses of his last sickness and of his funeral and the costs and charges of administration; and provided further, that if there be no widow and no child and no child of any deceased child of such deceased owner of any homestead such homestead shall be subject to all the debts and liabilities of such deceased owner."

The statute on devise of homestead, sec. 238.04, Stats. 1931, provides:

"When any homestead shall have been disposed of by the last will and testament of the owner thereof the devisee shall take the same free of all judgments and claims against the testator or his estate, except mortgages lawfully executed thereon and laborers' and mechanics' liens; provided, that if such owner shall not leave a widow or minor child or other property than his homestead sufficient to pay the expenses of his last sickness, his funeral and the costs and charges of administering his estate, such homestead shall be subject to such expenses, costs and charges; and provided further, that if he shall not leave a widow, child or grandchild nor other property sufficient to pay his debts and liabilities such homestead shall be liable therefor."

In *Hoyt v. Howe* (1854), 3 Wis. *752, it was held under the homestead statutes at that time that a judgment became a lien upon homestead premises though taken after the premises became a homestead, but that the premises could not be

sold upon execution until the debtor ceased to occupy the premises as a homestead or conveyed them. By ch. 137, Laws of 1858, the then homestead law was amended to provide that the homesteader might move or sell the premises without rendering same liable to sale on execution. In *Upman v. Second Ward Bank* (1862), 15 Wis. *449, the question was whether after a judgment had been taken a subsequent occupation of the premises as a homestead superseded the lien of the judgment. In that case, the judgment was taken against a debtor who at the time resided in Minnesota, but who owned certain real estate in the city of Milwaukee. He later moved to Milwaukee and occupied the real estate there located as his homestead. The court said at page *453:

"The statute makes it a material condition to the exemption of the property, that it is *'owned and occupied* by a resident of this state' for a homestead. The word homestead itself means a place of residence, which again implies occupancy, possession. If the property is not a homestead when the judgment is obtained, it is a lien upon it. The property not being a homestead, in other words not being exempt, when the judgment is obtained, the judgment creditor has the right to levy on the same to the exclusion of other adverse interests subsequent to the judgment; and when the levy is made, the title of the creditor relates back to the judgment, so as to cut off intermediate incumbrances. Now while the judgment creditor is following up the steps of the law to make his general lien effectual, by selling real estate not exempt from sale on execution, can the judgment debtor interfere, and annul and destroy this right, by claiming the property as a homestead? It appears to us not, and that the legislature could never have contemplated any such result. For if the judgment debtor could defeat the creditor under such circumstances, and destroy his right to sell the property, we are unable to see why a party might not, upon the same principle, buy real estate subject to sale under prior existing liens, and then utterly defeat those liens by claiming

the property for a homestead. Hence we are of opinion, if at the time the judgment is rendered, the property is not exempt, that then the creditor may proceed and consummate his title by levy and sale under the judgment, and that it is not in the power of the debtor to defeat this right."

In *Bridge v. Ward*, 35 Wis. 687, the court held that where a judgment debtor owned two lots at the time the judgment was taken, one of which constituted his homestead, he could not sell his homestead and move onto the other lot and subordinate the lien of the judgment theretofore taken to his homestead rights in such latter lot. (See at page 691.)

In *Pasco v. Harley*, 73 Fla. 819, 831, 75 So. 30, a judgment was obtained against an unmarried man who under the Florida law was not then entitled to a homestead exemption as the head of a family. Subsequently he married and became the head of a family within the Florida statute. The court held that the lien of the judgment against his property was not defeated because it subsequently became the debtor's homestead. The court said:

"A statutory lien obtained in the enforcement of a debt is a beneficial property right. And if such a right exists with reference to property before and at the time homestead exemption rights accrue, such pre-existing beneficial right is not displaced by the subsequently acquired homestead exemption right; but the exemption rights attach to the property subject to the enforcement of the pre-existing lien rights. . . . While the homestead exemption provisions of the constitution should be liberally applied to carry out their manifest purpose, they were not intended to be so applied as to permit an injustice to be done. The purpose of the organic provisions is to secure homestead exemptions where they properly attach under the law and not to deprive lienholders of their vested rights in property to which the homestead exemptions may afterwards be extended."

To the same effect see *First State Bank of Gackle v. Fischer*, 67 N. D. 400, 272 N. W. 752; *Rusch v. Lagerman*,

194 Minn. 469, 261 N. W. 186; 13 R. C. L. p. 601; 29 C. J. pp. 859, 860; Annotation, 110 A. L. R. 883.

Respondents give undue significance to the decision in *Berger v. Berger, supra.* Much of what is there said is *obiter dictum* and has no application in the instant case. That was an action by a vendor to impress a vendor's lien on certain real estate for the unpaid balance of the purchase price. No proceedings had been taken against the vendee during his lifetime. The action was thereafter brought against the heirs of the deceased vendee. The heirs contested on the ground that the premises constituted the homestead of the deceased vendee and, as such, were free from a vendor's lien. The court, in an opinion by Justice MARSHALL, said (p. 283) :

"It is an old and well-established principle of equity that a vendee of land cannot in good conscience retain it and not pay therefor in full, and that a court of equity will recognize and enforce the vendor's equitable rights. That right, however, is not a lien in the strict sense of the term, though it is commonly spoken of as such. It is not an interest in the land reserved by the vendor, but is a mere equitable right to a lien. Till the right is judicially fixed upon the land, the vendor is possessed of but the capacity to acquire a lien, which he may lose in various ways. Being but a mere creature of the unwritten law, it may be changed or abolished entirely by statute if thought best in the wisdom of the legislature. The right to a vendor's lien has been abolished by legislative enactments in many of the states, and in others, because of the policy of the recording acts, it has been treated as nothing but a mere floating equity prior to the commencement of judicial proceedings to acquire a specific lien upon the land."

This so-called floating equity is something quite different from the statutory lien of a judgment creditor, which is notice to the world when docketed. The court did construe sec. 2271, Stats. 1898, now sec. 237.02, as abolishing a vendor's right to a lien because the statute provided that

homesteads descend free of all judgments and claims except mortgages and laborers' and mechanics' liens. The court did say at page 285:

"The purchase-money lien, so called, is not an interest in the land reserved in the vendor; it is not a lien at all in the sense of being a vested interest in the property, as is the lien of a judgment."

Following, on the same page, the court said:

"It by no means follows that, because a judgment lien upon land cannot be extinguished by its subsequent occupancy as a homestead, it will not be extinguished, if a homestead, by the death of the owner."

This and similar statements relative to the lien of judgment creditors are clearly *obiter dictum*. Sec. 272.20, Stats. 1931, relates to homestead exemption and further provides:

". . . shall be exempt from seizure or sale on execution, from the lien of every judgment and from liability in any form for the debts of such owner to the amount in value of five thousand dollars, except laborers,' mechanics' and purchase-money liens and mortgages lawfully executed, and taxes lawfully assessed and except as otherwise provided in these statutes. . . ."

Notwithstanding this language, this court has held, as shown above, that the homestead exemption statute (sec. 272.20) does not remove the lien of a judgment which attached before the acquisition of homestead rights.

While the judgment-lien section, 270.79, excepts the homestead mentioned in sec. 272.20, it seems clear that unless homestead rights existed at the time the judgment was docketed, the exception could have no application. You cannot except something which does not exist.

Respondents contend that sec. 272.20, Stats., on homestead exemptions and sec. 270.79 on judgment liens deal with rights, liabilities, and privileges of living debtors. They

argue that by virtue of sec. 238.04 the rights of heirs and devisees are determined as of the time of the debtor's death. In other words, the logic of their position is that the heirs and devisees by virtue of said section acquire some right or interest in excess of that possessed by the judgment debtor at the time of his death. Counsel has cited no authorities to sustain their position other than the *obiter dictum* in the *Berger Case, supra.* Of course, counsel relies upon the literal interpretation of sec. 238.04. Their position would be sound if the lien of the judgment had not attached before homestead rights accrued. Sec. 370.01 provides rules for construction of statutes. Sub. (46) is as follows:

"*Homestead.* The word 'homestead' means the estate or interest in land as defined and set forth in section 272.20, except as provided in subsection (2) of section 237.02."

If respondents' position is sound, the door is open to perpetrate fraud upon judgment creditors. A party may own a forty-acre farm worth $5,000. A creditor may obtain a judgment for the full sum of $5,000. At the time the judgment is obtained and docketed the farm is not occupied as a homestead, but before the judgment creditor can levy and make sale the judgment debtor moves onto the farm, takes possession, and claims it as his homestead. Under our decisions the homestead right is subordinate to the lien of the judgment, but if in the meantime the judgment debtor should die, according to respondents' position, his heirs and devisees would take the homestead free from the lien of the judgment and free of all claims against the testator or his estate. We cannot conceive that the legislature intended any such loophole by the enactment of sec. 238.04, Stats. The mere *obiter dictum* in the *Berger Case, supra,* does not justify any such construction.

Mrs. Hogan's homestead rights in the one-hundred-seventeen-acre farm in Green county attached to her interest there-

in as of the time she took possession and made same her homestead to the extent permissible under sec. 272.20, Stats. Said farm was then subject to the lien of appellants' judgment the same as if the farm was at said time subject to a mortgage or mechanic's lien. The lien of the judgment, the same as a mortgage or mechanic's lien, is superior to the estate or interest which later became her homestead interest. See *Papenthien v. Coerper,* 184 Wis. 156, 162, 198 N. W. 391.

Sec. 272.14, Stats. 1931, provides:

*"Execution after party's death.* After the expiration of one year from the death of a party against whom a final judgment shall have been rendered execution thereon *may be issued against any property upon which such judgment shall have been a lien at the time of the death of such party, and may be executed in the same manner and with the same effect as if he were still living;* but no such execution shall issue except upon an order, made upon sufficient cause shown, by the court or judge thereof. If such judgment be against such deceased debtor and others jointly execution may be issued in the usual manner against such of the judgment debtors as survive, without delay."

The purpose of suspending the judgment creditor's right to have execution issued for one year from the death of the judgment debtor, and requiring that the execution shall then issue only upon an order by the court or judge thereof upon sufficient cause shown, was to allow a reasonable time for the administration of the estate,—to prevent creditors from embarrassing the estate and adding to existing confusion due to the death of the owner. *State ex rel. Rasmussen v. Circuit Court,* 222 Wis. 628, 630, 269 N. W. 265. This court held that the execution may be issued against *the* property upon which the judgment is a lien, and that the circuit court was without authority to impose as a condition that the execution issue against certain property only.

In *Musa v. Segelke & Kohlhaus Co.* 224 Wis. 432, 434, 436, 272 N. W. 657, the court had occasion to consider the application of sec. 270.79 and sec. 272.14, Stats., to a situation where the judgment debtor's interest was that of a joint tenant. In that case defendants contended:

"That although the title to the premises was held, from July 22, 1915, to the time of Adam Musa's death, in joint tenancy by him and the plaintiff, Julia Musa, who survived him, nevertheless, under the definite wording of sec. 272.14, Stats., it was intended that the lien rights given a judgment creditor by sec. 270.79, Stats., were not to be defeated by the death of the judgment debtor, even though his interest or estate was but that of a joint tenant; and that by sec. 272.14, Stats., such lien rights were only suspended to afford the debtor's heirs and personal representatives an opportunity to adjust his affairs."

The court held (page 436) that the lien of the judgment could attach only to such interest or estate as Adam Musa actually and effectively had in the premises; that his interest or estate continued to be that of a joint tenant while he was alive; that such interest or estate was subject to and limited by the right of survivorship which is a special incident of every joint tenancy, and by reason of which, on the death of one joint tenant, his interest goes to his survivor. The court said:

"Upon the death of a joint tenant, there remains no interest or property right in the deceased in the premises held by him in joint tenancy up to the time of his death, in respect to which there can be operative an execution issued after his decease on a judgment against him."

The court further held that the mere lien arising from the docketing of the judgment did not cause a severance of the deceased debtor's interest as a joint tenant from the interest of his cotenant. This case is no authority for respondents'

contentions in the instant case.   It follows that the judgment of the county court must be reversed.

*By the Court.*—Judgment reversed, and record remanded with directions that appellants' judgment be paid in full with costs.

A motion for a rehearing was denied, with $25 costs, on January 10, 1939.