**Joseph W. SHEEHAN, Appellant,**

v.

**ESTATE OF Kathleen Rogers GAMBERG, Appellee.**

No. 6899.

Supreme Court of Alaska.

Jan. 27, 1984.

---

Joseph W. Sheehan, Pro Se, Fairbanks, for appellant.

Barbara L. Schuhmann and Dennis E. Cook, Schaible, Staley, DeLisio & Cook, Fairbanks, for appellee.

## OPINION

Before BURKE, C.J., and RABINOW-ITZ, MATTHEWS, COMPTON and MOORE, JJ.

MOORE, Justice.

Joseph Sheehan was the attorney for Kathleen Rogers Gamberg in her contested divorce from Leslie Rogers. Judgment was entered on December 17, 1979, granting the divorce, and awarding Gamberg certain property. As a result of this representation, Gamberg was indebted to Sheehan for legal services rendered.

On July 15, 1980, Gamberg signed a confession of judgment in favor of Sheehan. The confession of judgment was filed in court, and judgment was entered by the court on July 30, 1980. Gamberg died on October 7, 1980. Eight days after her death, Sheehan recorded the judgment in order to establish a judgment lien on the real property left in her estate.

On February 13, 1981, the personal representative of Gamberg's estate (hereinafter "Estate") filed a petition requesting the court to declare the judgment lien void because the judgment was recorded after Kathleen's death, thereby making Sheehan's claim against the Estate general and unsecured. The superior court granted the petition.

On February 23, 1981, Sheehan filed notice of an attorney's lien in relation to the divorce judgment entered in 1979. Subsequently, Sheehan filed a motion to confirm and enforce his attorney's lien against a pension plan and stock still in the possession of Leslie Rogers, but which Leslie Rogers was required to transfer to Gamberg pursuant to the divorce decree. The Estate opposed the motion on the ground that the notice of lien was filed after Gamberg's death, and that Sheehan had waived his right to establish an attorney's lien by recovering a judgment against Gamberg. The superior court denied Sheehan's motion. Sheehan appeals from the superior court's orders denying his judgment lien and attorney's lien.

We first consider the validity of Sheehan's judgment lien. Under AS 09.30.010, a person holding a judgment upon which execution may issue can create a judgment lien upon the judgment debtor's real property by recording the judgment.[1] The lien is effective from the date of recording. AS 09.30.010.

Although the judgment lien statute does not appear to bar the creation of a judgment lien after the death of the defendant, the following statutes must be considered. First, AS 13.16.505 provides:

No execution may issue upon nor may any levy be made against any property of the estate under any judgment against a decedent or a personal representative, but this section shall not be construed to prevent the enforcement of mortgages, pledges or liens upon real or personal property in an appropriate proceeding.

Also, AS 09.35.060 provides:

If the judgment debtor dies after judgment, execution may be issued on the judgment in the manner and with the effect as if he were still living, except that no action may be taken within six months from the granting of letters testamentary or of administration upon the estate of the deceased without leave of the court having jurisdiction over the probate of the estate.

In light of these statutes, it does not appear that a judgment lien can be created after the death of the judgment debtor. The judgment lien statute states that only judgments "upon which execution may issue" may be recorded. AS 09.30.010. Both AS 13.16.505 and AS 09.35.060 prohibit, at least temporarily, the execution of judgments after the judgment debtor's death.

■ Furthermore, to allow the creation of judgment liens after the judgment debtor's death would defeat the operation of AS 13.16.505. A judgment holder would simply obtain a judgment lien after the death of the debtor, and then proceed to execute the lien. However, the purpose of AS 13.-16.505 is to freeze the status of all claims at the death of the debtor in order to provide for the orderly administration of the estate. See In re Hogan's Estate, 229 Wis. 600, 282 N.W. 5, 9 (1938) ("The purpose of suspending the judgment creditor's right to have execution issued for one year from the death of the judgment debtor ... was to allow a reasonable time for the administration of the estate—to prevent creditors from embarrassing the estate and adding to existing confusion ....")

■ Finally, under the Alaska devolution statute,[2] the property of a decedent de-

---

1. AS 09.30.010 provides in part that:
   A certified copy of the judgment or decree of a court of this state or a court of record of the United States upon which execution may issue, the enforcement of which has not been stayed, may be recorded with the recorder of a recording district. From the recording, the judgment or decree becomes a lien upon the real property of the defendant which is in the recording district, .... From the date of recording the judgment or decree, together with

the order allowing issuance of execution, the judgment or decree becomes a lien in the manner provided in this section.

2. AS 13.16.005 provides in part that:
   The power of a person to leave property by will, and the rights of creditors, devisees, and heirs to his property are subject to the restrictions and limitations contained in this code to facilitate the prompt settlement of estates. Upon the death of a person, his real and

volves[3] to his heirs or devisees immediately upon his death, subject to the rights of creditors. Thus, a judgment creditor of a decedent cannot create a new property interest, such as a judgment lien, in the decedent's estate since title is in the heirs or devisees. The superior court's order denying Sheehan's claim for a judgment lien is affirmed.

■ We next consider the validity of Sheehan's attorney's lien. Under the Alaska attorney's lien statute, an attorney's charging lien is not valid until the required notice has been given.[4] *See* AS 34.35.430; *Phillips v. Jones,* 355 P.2d 166, 170 (Alaska 1960); *In re Winston's Lien,* 6 Alaska 482, 485 (D.Alaska 1922).

Sheehan claims a charging lien pursuant to AS 34.35.430(a)(4) which requires that the attorney (1) file the lien with the court clerk "where the judgment is entered and docketed" and (2) give "notice of the lien to the party against whom the judgment is given." Sheehan has met both of these requirements, since on February 23, 1981 he filed notice of his charging lien with the Clerk of the Superior Court in Docket Nos. 4FA–77–2172 and 4FA–80–285P and served in both dockets the attorney for Rogers and the Estate.

■ The Estate argues that Gamberg's death on October 7, 1980, precludes Sheehan from perfecting his attorney's lien. We have found no case authority supporting that argument. It is Sheehan's labor which created the property against which the lien is being asserted. 53 C.J.S. *Liens* § 9 (1948). Any time limitation by which a creditor must perfect his lien should be measured from a point in time when services were completed, as well as any time limits imposed by applicable statutes, in this case the devolution and attorney's lien statutes.[5] Thus, the death of the debtor should not be the determinative factor in the proper creation of a statutory lien under AS 34.35, *et seq.*

AS 13.16.005 passes the decedent's property to the heirs or devisees upon death. The statute contains limiting language. The devisor's "power ... to leave property by will ... is subject to the restrictions and

---

personal property devolves to the persons to whom it is devised by his last will ... or in the absence of testamentary disposition, to his heirs ... subject to ... rights of creditors....

3. "Devolve" is defined as follows:
To pass or be transferred from one person to another; to fall on, or accrue to, one person as the successor of another; as a *title,* right, office, liability. The term is said to be peculiarly appropriate to the passing of an estate ....

*Black's Law Dictionary* 540 (5th ed. 1979) (emphasis added). *See also* Wright, *Uniform Probate Code Practice Manual* § 12.1 (1972) ("Title to a decedent's property, both real and personal, passes to his heirs ... or to the devisees ...,immediately upon death"). The Alaska devolution statute is taken from the *Uniform Probate Code. Uniform Probate Code* § 3–101; AS 13.16.005.

4. AS 34.35.430 provides in pertinent part:
(a) An attorney has a lien for his compensation, whether specially agreed upon or implied, as provided in this section
....
(3) third, upon money in the hands of the adverse party in an action or proceeding in which the attorney is employed from the giving of notice of the lien to that party;

(4) fourth, upon a judgment to the extent of the costs included in the judgment or, if there is a special agreement, to the extent of the compensation specially agreed on, from the giving of notice of the lien to the party against whom the judgment is given and filing the original with the clerk where the judgment is entered and docketed.
AS 34.35.430(a)(1) and (2) pertains to a possessory lien between attorney and client. Our decision here applies only to charging liens between an attorney and another party under AS 34.35.-430(a)(3) and (4).

5. This is the approach generally taken by Alaska's lien provisions. *See, e.g.,* AS 34.35.068 (Mechanics' and Materialmen's Liens: 90 days from completion of project); AS 34.35.160 (Mines and Wells: 90 days after performance of services or cessation of work); AS 34.35.240 (Timber Lien: 60 days after completion of service or after the close of the work); AS 34.35.330 (Fish Packers' and Processors' Lien: 90 days from completion of work or the furnishing of material); AS 34.-35.405 (Watchman's Lien: 90 days after completion of services or cessation of labor); AS 34.-35.460 (Hospital and Nurses' Lien: 20 days from the date of injury or 15 days from date of release from the hospital, whichever comes first).

limitations in this code ... (and) subject ... to the rights of creditors." *Id.*

Time limitations on presentation of claims are set forth in AS 13.16.460 which reads in relevant part:

(a) All claims against a decedent's estate which arose before the death of the decedent, ... whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort or other legal basis, ... are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:

(1) within four months after the date of the first publication of notice to creditors if notice is given in compliance with § 450 of this chapter....[6]

The Estate issued its next notice to creditors on November 7, 1980. Both secured and general creditors were required to file notice of their claims by March 7, 1981. Sheehan filed notice of his claim with the probate court on November 5, 1980 and thus, timely complied with the provisions of AS 13.16.460(a)(1).

■ The attorney's lien statute does not specify any time limits in which the lien must be perfected. *See* AS 34.35.-430(a)(3),–430(a)(4). Our review of the legislative history offers no explanation for this omission.[7] In the absence of any expressed statutory limitation it would be improvident for this court to impose any time bar limitation unless the facts clearly

indicate the applicability of laches or estoppel.[8] Sheehan perfected his charging lien by complying with the requirements of AS 34.35.430(a)(4) on February 23, 1981. At that time the Estate and Rogers were notified of Sheehan's attorney's lien claim against the H.R. 10 Pension Plan and Piper Gaffray Stock held by Rogers.[9] This notice of an attorney's lien claim was also timely under the requirements of AS 13.-16.460(a)(1) since it was presented prior to March 7, 1981 (within four months after the Estate first issued notice to creditors on November 7, 1980).

■ Finally, the Estate argues that Sheehan waived his right to claim an attorney's charging lien by obtaining a Confession of Judgment from Gamberg on July 30, 1980 for his unpaid legal services. In essence the Estate maintains that Sheehan's right to perfect a statutory lien somehow merged into the Confession of Judgment. This argument is without merit. Under the facts presented Sheehan's debt remained unsatisfied and he was entitled to pursue any other collateral concurrent remedy before satisfaction of his judgment. *See* 46 Am.Jur.2d, Judgments, §§ 392–93 (1969).

We hold that the superior court erred in denying Sheehan's motion to confirm and enforce his attorney's lien as a secured creditor against the Pension Plan and stock held by Rogers or the Estate, and we direct

---

**6.** AS 13.16.450 (notice to creditors) states in relevant part:

A personal representative upon his appointment shall publish a notice once a week for three successive weeks in a newspaper of general circulation in the judicial district announcing his appointment and address and notifying creditors of the estate to present their claims within four months after the date of the first publication of the notice or be forever barred.

**7.** We note that AS 34.35.430 was basically copied from the Oregon statutes. In 1975 the Oregon Legislature amended its attorney's lien statute imposing a three year limitation on a charging lien where money was involved, and a one year limitation where personal property was involved. Or.Rev.Stat. §§ 87.450–460 (1975).

Accordingly, we urge our legislature to study the desirability of amending AS 34.35.430(a)(3) and (4) to provide for specific time limitations within which the attorney must perfect his or her lien.

**8.** Before the equitable doctrine of laches can be applied, the defendant must show the plaintiff was guilty of inexcusable delay, resulting in undue prejudice to the defendant. *See Moore v. State,* 553 P.2d 8, 15 (Alaska 1976).

**9.** Rogers asserts a right of offset against the Estate to retain the ownership and possession of the H.R. 10 Pension Plan and Piper Gaffray Stock which assets were awarded Gamberg in the Decree of Divorce entered on December 17, 1979. This claim is not before us and will have to be resolved in the probate action.

the superior court to enter such an order in favor of Sheehan.

AFFIRMED in part, REVERSED in part, and REMANDED.